```
         IN THE UNITED STATES DISTRICT COURT FOR THE

                       DISTRICT OF NEBRASKA

CONNIE J. JOHNSON,              )
                                )
           Plaintiff,           )         4:12CV3176
                                )
     v.                         )
                                )
CAROLYN W. COLVIN, Acting       )         MEMORANDUM OPINION
Commissioner of the Social      )
Security Administration,        )
                                )
           Defendant.           )
_____  )
```

This matter is before the Court on plaintiff, Connie J. Johnson's ("Johnson") appeal of a final decision by the Commissioner of the Social Security Administration denying the plaintiff's application for disability benefits from November 9, 2001, through October 31, 2005. The Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by the substantial evidence on the record.

**PROCEDURAL BACKGROUND**

Johnson filed applications for disability insurance benefits and supplemental security income and alleged disability beginning November 9, 2001 (Tr. 94-96, 579B-579E). After her applications were denied initially on April 28, 2004, and again upon reconsideration on August 25, 2004, Johnson requested an administrative hearing before an ALJ on October 21, 2004 (Tr. 36-50, 579F-579M). On December 21, 2006, the ALJ issued a partially favorable decision, finding Johnson disabled effective November

1, 2005 -- but not disabled prior thereto (Tr. 18-31). On September 11, 2008, the Appeals Council denied Johnson's request for review (Tr. 7-9). On July 29, 2009, the Nebraska District Court reviewed and remanded the ALJ's decision for further proceedings limited to the decision that Johnson was not disabled prior to November 1, 2005 (Tr. 7-10, 17, 580, 788).

On November 3, 2010, the ALJ again found Johnson was not disabled prior to November 1, 2005 (Filing 1, at 1); the ALJ's 2010 decision stands as the Commissioner's final decision (Ex. B, Filing 1, at 19; Filing 24, at 4).

## FACTUAL BACKGROUND[1]

In relevant part, Johnson is a sixty-two year old woman with a high school diploma and training in cosmetology (Tr. 94, 146, 149, 683). Johnson has past work experience as a receptionist, general clerk, and a telephone operator (Tr. 160-68). She alleges disability due to fibromyalgia; chronic fatigue syndrome; arthritis and pain in the spine, back of the neck, and fingers; brain fog; bladder leaks; memory problems; difficulty thinking; and carpal tunnel syndrome (Tr. 94, 140). Johnson also claims that her disability has limited her work, in that she must work slowly, she has unclear thinking, she fatigues quickly, she

---

[1] For more details, see *Johnson v. Astrue*, No. 4:08CV3231, 2009 WL 2256693, at *2-8 (D. Neb. July 29, 2009).

-2-

has very little energy, and she has trouble remembering things (Tr. 140).

Various doctors have assessed Johnson with fibromyalgia, severe fatigue, degenerative joint disease, and trouble concentrating, including Dr. Stayton (Tr. 274, 271) and Dr. Paulus (Tr. 333-34, 335, 336). The degree to which these impairments debilitate Johnson is in debate.

Johnson obtained a consultative disability examination from Dr. Wang on February 28, 2004 (Tr. 338-42). Johnson stated that she could walk less than one block, stand for less than 10 minutes, and sit for less than 30 minutes (Tr. 338). Johnson also had carpal tunnel syndrome on her right wrist treated by release surgery 27 years earlier and still had weakness on her right hand, but no numbness or tingling sensation (Tr. 338). After Dr. Wang's examination, he found Johnson had normal range of motion in her wrists, hips, knees, and ankles (Tr. 340-41). No specific trigger points were identified, but the whole shoulder blade showed tenderness on palpation (Tr. 340). Motor strength was 5/5 bilaterally in both upper and lower extremities (Tr. 341).

State Agency physician, Dr. Horley, reviewed Johnson's record on April 26, 2004, and opined that Johnson could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight-hour workday, sit six hours in an eight-

hour workday, and push and/or pull without limitation (Tr. 352-61). State Agency physician Dr. Weaver, D.O., affirmed Dr. Horley's determination regarding Johnson's residual functional capacity ("RFC") on August 16, 2004 (Tr. 362-63).

Between her RFC assessments, on June 16, 2004, Dr. Paulus, Johnson's primary care physician, penned a letter in regards to Johnson's conditions (Tr. 573). The letter stated that Johnson's pain was worse when she sat, some days she could only sit for a few seconds before having to change positions, that she could not extend her neck due to pain (Tr. 573). Furthermore, Dr. Paulus stated that fibromyalgia affected Johnson's memory, that she could not handle distractions, and that she experienced difficulty doing more than one simple task at a time (Tr. 573). In conclusion, he opined that, given the pain, memory and concentration difficulties, fibromyalgia, and degenerative joint disease, Johnson was unable to maintain gainful employment (Tr. 573). Dr. Paulus wrote two similar letters, both after the relevant period of inquiry (Trs. 527/599, 911).

Johnson's daughter, Angela Bornschlegl, completed a Supplemental Information Form on January 14, 2004, in support of Johnson's application for disability benefits (Tr. 175-78). The Supplemental Information Form stated that Johnson has a "fiery neck and back," a hard time concentrating, and is unable to keep

up on normal every day tasks (Tr. 175-78).  Johnson's daughter also noted that Johnson prepared some meals, walked one to two times a week with a few weeks' break in between, did limited chores, shopped, and participated in church activities (Tr. 175-78).

Johnson's former employer and son-in-law, Garth Bornschlegl (Tr. 689), submitted documentation on May 19, 2006, at the request of the ALJ, showing Johnson earned between $300.00 to $800.00 monthly from May 2005 through April 2006 (during the alleged time of disability and inquiry) and worked an average of 16 hours weekly as a receptionist (Tr. 106-30, 216, 222). Bornschlegl noted that "the quality of her work was usually acceptable, just slow" (Tr. 216).  "She did very well with taking phone calls and responding to them accordingly.  Although, she did make many mistakes and had to go back and redo them over again" (Tr. 216).  Bornschlegl also stated that Johnson would not do what others did in the same amount of time and had directions written down and would have to refer to them every time she did a particular task (Tr. 216).  The insurance company that Johnson worked for gave a similar response, in that Johnson lost her job because she was unable to memorize the extensions for the different offices after three days (Tr. 165).

Also, various doctors have diagnosed Johnson with degrees of mental distress or memory ability, including Dr.

-5-

Newman (Tr. 366-68), Dr. Ullman (Tr. 343-51), and Dr. Shilling (Tr. 578-79). In her examinations, Johnson scored within the average to low average range for a woman her age on the Wechsler Memory Scale-III test for memory recollection (Tr. 343-44). These results led Dr. Ullman to opine that Johnson possessed no major psychiatric illness (Tr. 345). In 2004, two consulting doctors, Drs. Branham and Newman, concurred with this assessment (Tr. 366-68). Drs. Schilling and Paulus assessed Johnson with depression and treated her with Lexapro (Tr. 572-78).

## ADMINISTRATIVE HEARING

On January 6, 2010, the ALJ questioned a medical expert, Dr. Alex, regarding Johnson's condition (Tr. 941). Dr. Alex first mentioned that Johnson's primary care physician diagnosed her with fibromyalgia and chronic fatigue syndrome but no evidence existed in the file regarding the eleven out of eighteen trigger points required to make the diagnosis of fibromyalgia (Tr. 948). Dr. Alex went on to say that it is not uncommon for a physician to make such a diagnosis without substantiating evidence (Tr. 948). Also, Dr. Alex testified that the record illustrated the fibromyalgia diagnosis was based upon Johnson's subjective expressions with no evidence of the proof of those expressions (Tr. 949). When asked about Johnson's RFC, Dr. Alex stated that, excluding psychological considerations, Johnson could have performed light work, lifted twenty pounds

occasionally, lifted ten pounds frequently, sat or walked six hours in an eight-hour day, and performed postural motions occasions without restrictions as to the use of hands (Tr. 951).

Dr. Alex also disagreed with Dr. Paulus's letters dated June 16, 2004, August 30, 2006, and December 20, 2009 (Trs. 573/600, 527/599, 911 respectively), in which Dr. Paulus asserted Johnson could not maintain gainful employment because the medical record did not support Dr. Paulus's position (Tr. 952). Dr. Alex did not refute that Johnson exhibited symptoms of her alleged conditions -- but he asserted that the diagnoses were unsupported by the medical record (Tr. 953).

Dr. Alex succinctly stated that Johnson "has physical complaints. They do not affect her function" (Tr. 959). Dr. Alex made this statement based upon Dr. Wang's examination (Tr. 340-41), stating Johnson possessed various ranges of motion in her extremities (Tr. 959) and the lack of evidence for her diagnoses (Tr. 963). The ALJ then recessed until the next[2] supplemental hearing on September 15, 2010 (Tr. 968).

On September 15, 2010, Dr. England testified that Johnson's mental health impairments would appear severe "in the sense of more than minimal impairments" but he could not "necessarily confirm it would have been for a 12-month period"

---

[2] The ALJ next scheduled the matter on April 14, 2010, but the testifying witness was unavailable (Tr. 971-77). Therefore, the ALJ rescheduled to September 15, 2010.

(Tr. 999).  In fact, Dr. England believed Johnson responded well to medication (Tr. 999).

Dr. England classified Johnson's mental health impairment as an affective disorder,[3] Drs. Paulus and Stayton classified it as simple depression, and Dr. Shilling diagnosed major depressive disorder with single episodes (Tr. 1000).  Dr. England went on to say that depression responds well to medication (Tr. 1000).  Dr. England concluded that there was no twelve-month period in which Johnson suffered a severe impairment because of lack of information, low doses of medication, and focus on physical ailments instead of depression (Tr. 1001).

As a final expert, Mr. Leonhart was called as a vocational expert ("VE").  The ALJ asked the VE three hypothetical questions.  First, the ALJ asked the VE whether a person of Johnson's age, experience, and education who could perform "light exertional work"[4] could perform work as a receptionist, general clerk, and telephone solicitor (Tr. 1018). The VE answered affirmatively (Tr. 1018).

---

[3] Described in testimony as "1204" (Tr. 1000) which references 20 C.F.R. Part 404. Subpart P, Appendix 1, 12.04, "Affective Disorders".

[4] "Occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds.  Could stand, sit, or walk for six hours in an eight hour day.  Could occasionally perform postural activities, climb, balance, stoop, kneel, crouch, crawl.  Should avoid ladders, ropes, and scaffolds."  (Tr. 1018) (similar to Dr. Alex and Dr. Horley's RFC assessments at Trs. 352-61, 951).

Second, the ALJ asked the VE what other work such a hypothetical person might be able to perform (Tr. 1018). The VE answered that such a person could perform unskilled light work, such as production assembler,[5] cashier,[6] and house cleaner[7] (Tr. 1019).

Third, the ALJ asked the VE to consider the same hypothetical claimant but, in addition, could only perform repetitive work which did not require extended concentration (Tr. 1020). The VE testified that such an individual, given the ALJ's hypothetical, could perform the same, unskilled, light work (Tr. 1020).

### THE ALJ'S FINDINGS

The ALJ found Johnson had not engaged in substantial gainful activity since November 9, 2001 (Tr. 727). The ALJ concluded Johnson had the following impairments: fibromyalgia; degenerative joint disease with mild spondylolisthesis at L4; a history of carpal tunnel syndrome and releases; status post colon perforation, repair, and recovery; status post bowel infection; and Crohn's disease (Tr. 727). She did not conclude, however,

---

[5] Dictionary of Occupational Titles ("DOT") code 706.687-101. 4,230 jobs in Nebraska, Iowa, Missouri, and Kansas (the "four-state area"); 83,384 national jobs.

[6] DOT code 211.462-010. 55,639 four-state area jobs; 1,131,907 national jobs.

[7] DOT code 323.687-014. 17,783 four-state area jobs; 376,362 national jobs.

that Johnson had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. Subpart P, Appendix 1 (Tr. 728). The ALJ found that, from November 9, 2001, through October 31, 2005, Johnson was capable of performing light work as defined under 20 C.F.R. 404.1567(b) (Tr. 729). Furthermore, the ALJ determined that Johnson could have stood, sat, or walked for six out of eight hours a day, occasionally performed postural activities, but could not have performed more than unskilled work with an SVP 1-2 (Tr. 729). The ALJ also determined that Johnson could have performed her previous work as a receptionist, general clerk, and telephone solicitor (Tr. 736). Consequently, the ALJ found that Johnson was not disabled from November 9, 2001, through October 31, 2005 (Tr. 737).

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision. *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). If it is possible to draw two inconsistent positions from the evidence and one of those

positions represents the Commissioner's findings, the denial of benefits should be affirmed. *Id.* (quotations and citations omitted). Thus, the Court will uphold the Commissioner's final decision "if it is supported by substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## LAW AND ANALYSIS

Johnson's argument rests on four points which Johnson claims were not supported by substantial evidence: (1) the ALJ's determination not to afford "controlling" weight to the medical opinions of her treating physician, Dr. Paulus; (2) the ALJ's determination that Johnson's subjective statements of pain were not credible; (3) the ALJ's hypothetical questions to the VE were insufficient to support the ALJ's determination; and (4) the ALJ's insufficient evaluation of Johnson's carpal tunnel syndrome.

**1. The Weight given the Medical Opinions of Johnson's Treating Physician, Dr. Paulus**

Although a treating physician's opinion is typically entitled to deference, "an ALJ need not defer to such an opinion when it is inconsistent with the substantial evidence in the record." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ afforded deference to Dr. Paulus's diagnosis of

fibromyalgia but discovered inconsistencies in Dr. Paulus's evaluation of the severity of Johnson's conditions.

First, the ALJ alluded to Johnson's regular activities and work history.  Johnson performed her own household chores, she shopped, she walked twice a week, she attended church functions, and she worked during the time of inquiry.

Second, the record reflects that Drs. Stayton and Paulus advised Johnson to undertake water aerobics or light consistent exercise to remedy her fibromyalgia in 2001 through 2004.

Furthermore, the record lacks substantiating, objective medical evidence of the severity of Johnson's conditions. Finally, substantial evidence supports the RFC evaluations of Drs. Wang, Horley, and Alex which determined that Johnson could continue to perform "light work."  Therefore, the record supports the ALJ's explanation and decision to grant Dr. Paulus's opinion regarding the severity of Johnson's conditions less than controlling deference.

## 2. The ALJ's Credibility Determination

In making an RFC determination, the ALJ is required to consider the "claimant's own descriptions of his limitations" unless the ALJ makes a proper credibility determination and finds that a plaintiff's statements regarding her own pain are not credible.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217–18.  To

make such a finding, an ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to: (1) claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; (5) functional restrictions. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is one factor in evaluating the credibility of the testimony and complaints. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1986).

Consequently, an ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints. *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000). The ALJ, however, is "not required to discuss methodically each Polaski consideration." *Id.* at 972. Deference is generally granted to an ALJ's determination regarding the credibility of a claimant's testimony. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason" for discrediting claimant's credibility, deference is given to the ALJ's opinion, "even if every factor is not discussed in depth.").

The ALJ's credibility analysis rested upon the following considerations:  Johnson's daily activities, absence of objective medical support for the pain's severity, Johnson's contemporaneous work and medical history, Johnson's subjective statements of pain.  Because the ALJ considered the factors in *Polaski*, and because her determination was not based solely upon the lack of supporting medical documentation, the Court finds that the ALJ complied with the requirements to disregard Johnson's subjective statements regarding the severity of her conditions and that the record as a whole provides substantial evidence to support the ALJ's determination.

**3. The ALJ's Hypothetical Question**

"Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question."  *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004).  The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole.  *Id.*  However, the hypothetical question need only include those impairments which the ALJ accepts as true.  *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991).

In this case, the ALJ's three hypothetical questions contained all impairments which the substantial evidence of the record supported.  The questions were based primarily on the RFC which the substantial evidence of the record supported.  This

evidence includes consistent medical evaluations, the disregard of Johnson's subjective testimony of the conditions' severity, and the lesser deference to Dr. Paulus's assessment. In addition, the ALJ asked the VE an alternative question regarding a hypothetical claimant who could not concentrate for extended periods but could perform "light work." Substantial evidence supports the ALJ's finding that Johnson was not limited in her ability to sit or stand for certain amounts of time or to lift certain amounts of weight. *See Travis v. Astrue*, 477 F.3d 1037, 1041–42 (8th Cir. 2007) (stating courts do "not reverse merely because evidence also points to an alternate outcome"). The ALJ presented the VE with fair hypothetical questions that accurately set forth Johnson's limitations.

### 4. Carpal Tunnel Syndrome

Hypothetical questions must capture the concrete consequences of the claimant's deficiencies. *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011) (quotations and citations omitted). However, the ALJ may exclude any alleged impairments that she has properly rejected as untrue or unsubstantiated. Id.

None of Dr. Paulus' letters regarding her inability to work mentioned Johnson's carpal tunnel (Trs. 573/600, 527/599, 911). Johnson complained to Dr. Wang of a history of carpal tunnel, including release surgery 27 years previously, yet Dr. Wang assessed Johnson as possessing a normal range of motion for

all fingers.  Tr. 341.  Dr. Horley assessed no limitation in handling or fingering limitations on Johnson (Tr. 356).  Dr. Alex plainly stated that Johnson's RFC should contain no limitation in the hands.  Tr. 951.  Furthermore, the ALJ's determination to disregard Johnson's subjective statements of severity included considerations involving carpal tunnel.  *See* Tr. 735 (discussing the ability to lift groceries and laundry).  Substantial evidence supports the ALJ's determination not to specifically include carpal tunnel as a limiting factor in her hypothetical question to the VE.

## CONCLUSION

Substantial evidence in the record as a whole supports the ALJ's findings.  The Commissioner's denial of plaintiff's benefits claim will be affirmed.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 17th day of September, 2013.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court